Adam S. Paris (State Bar No. 190693)
parisa@sullcrom.com
Shane M. Palmer (State Bar No. 308033)
palmersh@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Nathaniel L. Green (State Bar No. 260568)
greenn@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1870 Embarcadero Road
Palo Alto, California 94303
Telephone:   (650) 461-5600
Facsimile:   (650) 461-5700

*Counsel for Daniel Ciporin, Jeffrey Crowe, Timothy Mayopoulos, Mary Meeker, John C. Morris, Scott Sanborn, Lawrence Summers, and Simon Williams*

*(Additional Counsel listed on signature page)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY SAWYER, Derivatively on Behalf of Nominal Defendant LENDINGCLUB CORPORATION,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SCOTT SANBORN, JOHN C. MORRIS, JOHN J. MACK, MARY MEEKER, LAWRENCE SUMMERS, SIMON WILLIAMS, DANIEL CIPORIN, JEFFREY CROWE, TIMOTHY J. MAYOPOLOUS, RENAUD LAPLANCHE, and CARRIE DOLAN,<br><br>                    Defendants,<br><br>and,<br><br>LENDINGCLUB CORPORATION,<br><br>                    Nominal Defendant. | CASE NO.: 3:17-cv-06447-WHA<br><br>**DIRECTOR DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR FAILURE TO COMPLY WITH THE STATUTE OF LIMITATIONS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Judge:  The Honorable William H. Alsup<br>Courtroom:  12<br>Date:  August 16, 2018<br>Time:  8:00 a.m. |

| | |
|---|---|
| 1 | TO ALL PARTIES AND THEIR COUNSEL OF RECORD: |
| 2 | PLEASE TAKE NOTICE that on August 16, 2018, at 8:00 a.m., or as soon thereafter |
| 3 | as the matter may be heard in the United States District Court for the Northern District of California, |
| 4 | located at 450 Golden Gate Avenue, San Francisco, California, Defendants Daniel Ciporin, Jeffrey |
| 5 | Crowe, John J. Mack, Timothy Mayopoulos, Mary Meeker, John C. Morris, Scott Sanborn, Lawrence |
| 6 | Summers, and Simon Williams (the "Director Defendants" or "Directors"), through their undersigned |
| 7 | counsel will, and hereby do, move to dismiss with prejudice the claims against Director Defendants, as |
| 8 | set forth in the Verified Shareholder Derivative Complaint for Violation of the Federal Securities |
| 9 | Laws ("Complaint" or "Compl."), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure |
| 10 | for failure to timely file the action within the applicable statute of limitations.  Pursuant to the Court's |
| 11 | Order After Hearing on Motion to Intervene entered on June 28, 2018 in the matter *Stadnicki* v. |
| 12 | *Laplanche, et al.*, Case No. 3:16-cv-03072-WHA (N.D. Cal.), this Motion is based solely on statute of |
| 13 | limitations grounds and is made without prejudice to the Director Defendants' right to move to dismiss |
| 14 | the Complaint at a later date on grounds other than those asserted in this Motion. |
| 15 | The motion is based on this Memorandum of Points and Authorities in Support of the |
| 16 | Director Defendants' Motion to Dismiss the Verified Shareholder Derivative Complaint for Failure to |
| 17 | Comply with the Statute of Limitations, the Complaint in this action and the materials cited therein, |
| 18 | the Declaration of Adam S. Paris and Request for Judicial Notice (and accompanying exhibits) filed |
| 19 | concurrently herewith, and such additional material and arguments as may be considered by the Court |
| 20 | at the hearing. |

Dated: July 12, 2018

/s/ *Adam S. Paris*

Adam S. Paris (State Bar No. 190693)
parisa@sullcrom.com
Shane M. Palmer (State Bar No. 308033)
palmersh@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone:     (310) 712-6600
Facsimile:     (310) 712-880

1  Nathaniel L. Green (State Bar No. 260568)
   greenn@sullcrom.com
2  **SULLIVAN & CROMWELL LLP**
   1870 Embarcadero Road
3  Palo Alto, California 94303
   Telephone:      (650) 461-5600
4  Facsimile:      (650) 461-5700

5  *Counsel for Daniel Ciporin, Jeffrey Crowe, Timothy Mayopoulos, Mary Meeker, John C. Morris, Scott Sanborn, Lawrence Summers, and Simon Williams*

7  /s/_Jonathan D. Polkes_____
   Jonathan D. Polkes (admitted *pro hac vice*)
8  jonathan.polkes@weil.com
   **WEIL, GOTSHAL & MANGES LLP**
9  767 Fifth Avenue
   New York, New York 10153-0119
10 Telephone:      (212) 310-8881
   Facsimile:      (212) 310-8007

11 *Counsel for John J. Mack*

**TABLE OF CONTENTS**

Page

**MEMORANDUM OF POINTS AND AUTHORITIES**..................................................................1

**I.    INTRODUCTION**..................................................................................................................1

**II.   BACKGROUND**....................................................................................................................2

      A.      LendingClub .......................................................................................................2

      B.      The Cirrix Investment ........................................................................................3

      C.      LendingClub's May 9 and May 16, 2016 Disclosures ......................................4

      D.      Subsequent Litigation .........................................................................................4

**III.  LEGAL STANDARD** ...........................................................................................................6

**IV.   ARGUMENT**..........................................................................................................................6

      A.      Plaintiff's Claims Are Time-Barred...................................................................6

            1.      Plaintiff Failed to Bring the Action Within the One-Year Limitations Period that Applies to All Section 14(a) Claims..................................6

            2.      Plaintiff's Statements and Conduct in the *Stadnicki* Action Confirm His Claims Are Untimely. .............................................................................8

            3.      Plaintiff Has Not Pled Any Basis for Tolling the Limitations Period, and None Exists. .............................................................................................8

**V.    CONCLUSION** ......................................................................................................................9

SULLIVAN &
CROMWELL LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Audio Marketing Servs., S.A.S.* v. *Monster Cable Prods., Inc.*,
Case No. 12-cv-04760-WHA, 2013 WL 633202 (N.D. Cal. Feb. 20, 2013) .................................6, 9

*Bd. of Regents of Univ. of State of N.Y.* v. *Tomanio*,
446 U.S. 478 (1980) ........................................................................................................................1

*Biotechnology Value Fund, L.P.* v. *Celera Corp.*,
12 F. Supp. 3d 1194, 1205 (N.D. Cal. 2013) ...........................................................................6, 8, 9

*Calderon* v. *U.S. Dist. Court for the N. Dist. of California*,
98 F.3d 1102 (9th Cir. 1996) ..........................................................................................................2

*Jablon* v. *Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) ..........................................................................................................6

*In re Juniper Networks, Inc. Sec. Litig.*,
542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..........................................................................................6

*In re Korean Air Lines Co., Ltd.*,
642 F.3d 685 (9th Cir. 2011) ..........................................................................................................2

*Lozano* v. *Montoya Alvarez*,
134 S. Ct. 1224 (2014) ....................................................................................................................8

*Lyon* v. *Agusta S.P.A.*,
252 F.3d 1078 (9th Cir. 2001) ........................................................................................................1

*Sabbag* v. *Cinnamon*,
Case No. 5:10-cv-02735-JF (HRL), 2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) ..............3, 6, 7

*Sams* v. *Yahoo! Inc.*,
713 F.3d 1175, 1179 (9th Cir. 2013) ..............................................................................................3

*Santa Maria* v. *Pac. Bell*,
202 F.3d 1170 (9th Cir. 2000) ........................................................................................................9

*Scott* v. *Gino Morena Enters., LLC*,
888 F.3d 1101 (9th Cir. 2018) ........................................................................................................1

*Stadnicki* v. *Laplanche, et al.*,
Case No. 3:16-cv-03072-WHA (N.D. Cal.) ............................................................................ *passim*

*United States* v. *Ritchie*,
342 F.3d 903 (9th Cir. 2003) ..........................................................................................................2

*Von Saher* v. *Norton Simon Museum of Art at Pasadena*,
 592 F.3d 954 (9th Cir. 2010) ..........................................................................................................3

*Wasco Prods., Inc.* v. *Southwall Techs., Inc.*,
 435 F.3d 989 (9th Cir. 2006) ..........................................................................................................9

**Statutes**

Securities Exchange Act of 1934 § 14(a) ........................................................................... *passim*

**Other Authorities**

17 C.F.R. § 240.14a-9 ......................................................................................................................5

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................................1, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

The Director Defendants respectfully submit this Memorandum in support of their Motion to Dismiss the Verified Shareholder Derivative Complaint for Failure to Comply with the Statute of Limitations pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to the Court's Order After Hearing on Motion to Intervene (the "Motion to Intervene"), entered on June 28, 2018 in the matter *Stadnicki* v. *Laplanche, et al.*, Case No. 3:16-cv-03072-WHA (N.D. Cal.), this Memorandum only addresses the untimeliness of the Complaint. The Motion is made without prejudice to the Director Defendants' right to move to dismiss the Complaint at a later date, if needed, on grounds other than those asserted in this Motion.

## I.    INTRODUCTION

"Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Bd. of Regents of Univ. of State of N.Y.* v. *Tomanio*, 446 U.S. 478, 487 (1980). They promote "diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh." *Scott* v. *Gino Morena Enters., LLC*, 888 F.3d 1101, 1110 (9th Cir. 2018) (quoting *Statute of Limitations*, Black's Law Dictionary (10th ed. 2014)). Where an action is untimely filed, statutes of limitations "bar[] a plaintiff from proceeding because he has slept on his rights, or otherwise been inattentive." *Lyon* v. *Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001).

Sawyer is just such a plaintiff: both his Complaint—a purported shareholder derivative action for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") premised on allegedly misleading proxy statements that allegedly were revealed to be false in May 2016 (over two years ago)—and his related motion to intervene in *Stadnicki* establish that Sawyer "slept on his rights" and that his claims should be dismissed as untimely. The LendingClub disclosures, analyst reports, and news articles that Plaintiff alleges revealed the "truth" that the at-issue proxy statements were allegedly false are all dated <u>more than a year</u> before Plaintiff filed this action on November 6, 2017. Most of them date back to May 2016. Plaintiff therefore cannot maintain that his claims accrued any later than his own Complaint alleges that the purported facts underlying those

claims were publicly revealed. His claims are untimely under the one-year statute of limitations applicable to Section 14(a) claims.

This appears to be the rare case where Plaintiff himself does not contest that his claims are untimely: the Complaint, in addition to containing allegations establishing that the action is time-barred, contains no explanation for Plaintiff's delay of nearly eighteen months in filing suit, let alone a legally cognizable basis for avoiding dismissal for the untimeliness of the claims resulting from that delay. Plaintiff's lack of diligence in pursuing his claims is the impetus for his Motion to Intervene in *Stadnicki*. During the course of briefing and arguing that Motion to Intervene, Plaintiff appeared to concede the untimeliness of the claims to the Court and refused to provide any evidence to explain his delay, prompting the Court's order that he provide such evidence. (*See* Motion to Intervene at 7, *Stadnicki* v. *Laplanche, et al.*, Case No. 3:16-cv-03072-WHA (N.D. Cal. May 18, 2018), Dkt. No. 39; *see also* Exhibit A to the Declaration of Adam Paris (the "Paris Decl.") (Transcript of Hearing at 5:23-6:2, *Stadnicki* v. *Laplanche*, Case No. 3:16-cv-03072-WHA (N.D. Cal. June 28, 2018), Dkt. No. 65); Order After Hearing on Motion to Intervene, *Stadnicki* v. *Laplanche, et al.*, Case No. 3:16-cv-03072-WHA (N.D. Cal. May 18, 2018), at 1 ((Dkt. No. 60).)[1]

In sum, Plaintiff has not engaged in the requisite "diligent prosecution" of his purported derivative claims and pleaded himself out of Court through the allegations of his own Complaint. The Complaint should be dismissed.

## II. BACKGROUND

### A. LendingClub

LendingClub Corporation ("LendingClub" or the "Company") is a publicly traded Delaware corporation. (Compl. ¶ 17.) At the core of its business is its online lending platform, which facilitates a wide variety of consumer and commercial loans by connecting borrowers with lenders.

---

[1] The Court may take judicial notice of the record of this proceeding. *See In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 689 n.1 (9th Cir. 2011) ("[A] court may take judicial notice of its own records in other cases . . . .") (quoting *United States* v. *Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)); *Calderon* v. *U.S. Dist. Court for the N. Dist. of California*, 98 F.3d 1102, 1108 (9th Cir. 1996) (taking judicial notice of testimony contained within a hearing transcript another case pending before the court); *see also United States* v. *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (The court may "consider . . . matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment.").

(*Id*. ¶ 2-3, 31-32.) LendingClub derives the majority of its profits from collecting fees based upon the loans it services. (*Id.* ¶¶ 3, 32, 127.) The Company was founded in 2006 and went public in December 2014. (*Id.* ¶¶ 28, 34-35.)

### B.  The Cirrix Investment

One of the investors to whom LendingClub sold the loans originated on its platform is Cirrix Capital, L.P. ("Cirrix"). (*Id.* ¶¶ 39-41.) Cirrix is a limited partnership whose business model focuses on investing in online loans. (*Id.*) According to the Complaint, Cirrix purchased nearly all its loans through LendingClub's platform. (*Id.* ¶¶ 47, 64.) The Complaint alleges that by purchasing loans through LendingClub, Cirrix boosted the number of loans facilitated by the platform and increased the company's earnings. (*Id*. ¶¶ 41, 65–66.) LendingClub's 2016 proxy statement disclosed that during 2015 Cirrix "purchased $139.6 million of whole loans and $34.9 million of interests in whole loans," and that LendingClub earned $636,000 in servicing fees and $357,000 in management fees from Cirrix during the year. (*Id.* ¶¶ 115, 184.)

In March 2016, LendingClub's former CEO Renaud Laplanche proposed to the LendingClub Board of Directors (the "Board") Risk Committee that LendingClub invest $10 million in Cirrix to acquire a 15% limited partnership interest in the fund. (*Id*. ¶¶ 64, 164.) The Complaint alleges that Mr. Laplanche's and Mr. Mack's prior investments in Cirrix were not disclosed to the Risk Committee (id. ¶¶ 41-42, 64, 165), and that the Risk Committee approved the investment without knowledge of the those stakes. (*Id.*)  In 2012, LendingClub had entered into and disclosed a credit support agreement with Cirrix, obligating the Company to reimburse Cirrix for credit losses on loans exceeding a certain threshold. (Paris Decl. Ex. B (Q3 2012 Form 10-Q) at 28; Ex. C (Q1 2016 Form 10-Q) at 11).)[2]

---

[2]  Although Plaintiff omits the portion of the May 16, 2016 Form 10-Q that discloses the Cirrix credit support agreement from his Complaint, the Court may consider this document in deciding this Motion because it is incorporated by reference into the Complaint. *See Sams* v. *Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("[W]e are permitted to consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them."). Additionally, and alternatively, the Court should take judicial notice of this disclosure and the Company's 2012 Q3 Form 10-Q to determine "what was in the public realm at the time" Plaintiff filed his Complaint. *See Von Saher* v. *Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *Sabbag*, 2010 WL 8470477, at *4 n.3 (taking judicial

### C. LendingClub's May 9 and May 16, 2016 Disclosures

On May 9, 2016, LendingClub filed a Form 8-K with the SEC and issued an accompanying press release, disclosing that the Board had accepted Mr. Laplanche's resignation. (*Id.* ¶ 117.) The Form 8-K and press release further disclosed that LendingClub had identified, and was taking steps to remediate, certain "material weaknesses in internal control[s]," including controls related to "the sales of non-conforming loans" and "the failure to disclose . . . personal investment interests." (*Id.* ¶ 118.) The latter control weakness referenced Cirrix, which the disclosure described as a "a failure to inform the board's Risk Committee of personal interests held in a third party fund while the Company was contemplating an investment in the same fund." (*Id.* ¶¶ 119.) The former weakness referred to the sale of certain loans to the Jefferies Group, which the disclosure further described as a sale "in contravention of the investor's express instructions," stating that "certain personnel apparently were aware that the sale did not meet the investor's criteria." (*Id.* ¶¶ 118-19.)

On May 16, 2016, LendingClub filed its Form 10-Q Quarterly Report for the first quarter of 2016, which further elaborated on the "material weaknesses" disclosed in its May 9 Form 8-K. It attributed the "material weaknesses" to "control deficiencies related to the Company's 'tone at the top'" and stated the "internal control[s] over financial reporting w[ere] ineffective as of December 31, 2015." (*Id.* ¶¶ 125, 128.) It went on to describe the steps the company was taking to remediate the weaknesses in internal controls and "restore investor confidence in its platform," including the removal of three senior managers, the implementation of additional protections against manipulation of loan data, and the provision of a "greater amount of [the Company's] own capital to purchase loans on its platform." (*Id.* ¶¶ 126-27, 130-31.)

### D. Subsequent Litigation

Several lawsuits were filed following these disclosures, including a securities class action filed in this Court on May 16, 2016, captioned *In re LendingClub Securities Litigation*, Case No. 3:16-cv-02627-WHA, which alleged various violations of the federal securities laws; the *Stadnicki*

---

notice of company's Form 8-K in an action brought under Section 14(a) in considering whether the limitations period had run on plaintiff's claim).

action, filed on June 6, 2016, alleging, *inter alia*, violations of Section 14(a) of the Exchange Act; and shareholder derivative actions filed on December 14, 2016 and August 15, 2017, which were consolidated on October 17, 2017 in Delaware Chancery Court, captioned *In re LendingClub Corp. Derivative Litigation*, C.A. No. 12984-CB, alleging causes of action for breach of the Defendants' duties of good faith and loyalty owed to LendingClub (briefing on a Defendants' dismissal motion is currently proceeding in the Delaware action).

Plaintiff filed this case on November 6, 2017, almost eighteen months after the latest of the at-issue disclosures. The Complaint asserts a single cause of action under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, for five categories of alleged misstatements and omissions purportedly contained within LendingClub's 2015 and 2016 proxy statements. Specifically, Plaintiff alleges that: (1) the 2015 proxy statement did not disclose Mr. Laplanche's and Mr. Mack's investments in Cirrix as "Related Party Transactions" (Compl. ¶ 199); (2) both proxy statements misstated that LendingClub had met its financial and operational goals, though the Company's performance was allegedly "based on results reported by Defendants as a result of the Company's deficient internal controls" (*id*. ¶ 200); (3) both proxy statements "falsely represent that the Board and Audit Committee oversaw and maintained accurate financial reporting and practices" despite the alleged existence of weaknesses in LendingClub's internal controls (*id*. ¶ 201); (4) the 2016 proxy statement stated that loan sales to Cirrix and the fees charged by LendingClub were "on terms and conditions that were not more favorable than those obtained by other third-party investors," though LendingClub had allegedly taken on significant credit risk through a credit-support agreement with Cirrix (*id*. ¶ 202); and (5) the 2016 proxy statement allegedly failed to disclose that the Risk Committee purportedly had approved LendingClub's investment in Cirrix without full knowledge of Mr. Laplanche's and Mr. Mack's investments in Cirrix (*id*. ¶ 203).

Six months later and almost two years after the *Stadnicki* action was filed, Plaintiff filed the Motion to Intervene in *Stadnicki* on May 18, 2018. In that Motion, Plaintiff argued that his intervention was necessary to "secur[e] a filing date within the statute of limitations." (Motion to Intervene, *supra*, at 7.) The Court heard oral argument on the Motion to Intervene on June 28, 2018.

During that argument, counsel for Plaintiff stated that, "the defendants are about to file a motion to dismiss [in *Sawyer*], arguing that it's outside of the statute of limitations. And in the interest of the company, we're duty-bound to look at that objectively and say that there is a chance that they would succeed." (Paris Decl. Ex. A, at 5:23-6:2.) The Court subsequently ordered Defendants to file this Motion. (Order After Hearing on Motion to Intervene, *supra*.)

## III.   LEGAL STANDARD

On a motion to dismiss for failure to plead a timely claim, if it is apparent from the face of the complaint that a claim is time-barred, then dismissal pursuant to Rule 12(b)(6) is appropriate. *See Jablon* v. *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss."); *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1050 (N.D. Cal. 2008) ("If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss." (citing *Jablon*, 614 F.2d at 682)). Further, if a plaintiff intends to assert that the statute of limitations has been tolled, the Complaint must contain facts supporting that proposition. *See Biotechnology Value Fund, L.P.* v. *Celera Corp.*, 12 F. Supp. 3d 1194, 1206 (N.D. Cal. 2013) (Alsup, J.) (complaint must contain facts "suggesting the applicability of equitable tolling to suspend the running of the statute [of limitations]" (quoting *Audio Marketing Servs., S.A.S.* v. *Monster Cable Prods., Inc.*, Case No. 12-cv-04760-WHA, 2013 WL 633202, at *6 (N.D. Cal. Feb. 20, 2013))).

## IV.   ARGUMENT

### A.   Plaintiff's Claims Are Time-Barred.

#### 1.   Plaintiff Failed to Bring the Action Within the One-Year Limitations Period that Applies to All Section 14(a) Claims.

Claims under Section 14(a) must be brought within one year from when the plaintiff discovered, or reasonably could have discovered, the facts constituting the violation. *See Sabbag* v. *Cinnamon*, Case No. 5:10-cv-02735-JF (HRL), 2010 WL 8470477, at *2 (N.D. Cal. Dec. 10, 2010) (limitations period begins to run "when a hypothetical reasonably diligent plaintiff would have discovered" facts constituting violation (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 646-47

(2010))*.*).  Plaintiff's complaint asserts a single cause of action under Section 14(a), based on alleged misstatements and omissions contained within LendingClub's 2015 and 2016 proxy statements. (Compl. ¶¶ 197-207.)  Plaintiff alleges that the challenged statements were misleading because they failed to disclose "weaknesses in LendingClub's internal controls" (*id.* ¶¶ 200-01), and because of the Director Defendants' purported mismanagement in performing their oversight duties (*id.* ¶¶ 199, 203-04).

Yet Plaintiff's allegations affirmatively establish that all of the alleged facts that constitute his cause of action were publicly disclosed no later than May 16, 2016.  Each of the Complaint's purported reasons why the challenged statements were misleading were disclosed to the public on or before that date:  Mr. Laplanche's and Mr. Mack's investments in Cirrix (*id.* ¶¶ 199, 204) were disclosed in the 2016 proxy statement filed on April 26, 2016 (*id.* ¶¶ 111, 115, 184), and the Risk Committee's approval of the Company's investment in Cirrix without all members of the Risk Committee being aware of those investments (*id.* ¶ 203) was disclosed on May 9, 2016 (*id.* ¶¶ 164-65, 186); the sale of nonconforming loans to an investor (*id.* ¶¶ 200-01) was disclosed on May 9, 2016 (*id.* ¶¶ 118-19); and the credit support agreement (*id.* ¶¶ 199-200, 202, 204) was first disclosed on November 14, 2012, without identifying Cirrix by name, in LendingClub's Q3 Form 10-Q (*see* Paris Decl. Ex. B (Q3 2012 Form 10-Q) at 28); Cirrix was identified by name in connection with the credit support agreement on May 16, 2016 (*see* Paris Decl. Ex. C (Q1 2016 Form 10-Q) at 11).

Any "reasonably diligent plaintiff" would have been aware of these disclosures at least as of May 2016.  *See Sabbag*, 2010 WL 8470477, at *4 (concluding plaintiffs' 14(a) claims were time barred because the defendant had "disclosed the truth about all of [its] misleading statements[] as of May 2009," but the plaintiffs did not file their first complaint until June 2010).

Further, Plaintiff concedes that news outlets also responded to LendingClub's disclosures.  The Complaint cites nine separate analyst reports and news articles, all published more than a year before Plaintiff filed his Complaint, relating to LendingClub's disclosures.  (*Id.* ¶¶ 122, 132-34, 138, 139.)  Even the last of these public reports—a Bloomberg article dated October 5, 2016—is still over a year before Plaintiff sued.  Plaintiff makes no attempt in the Complaint to explain why he waited to file his Complaint until November 6, 2017, nearly 18 months after LendingClub's

-7-

May 9, 2016 disclosures. As such, Plaintiff has pled himself out of a claim by quoting at length from LendingClub's detailed disclosures and citing to news articles and research reports describing the facts underlying Plaintiff's 14(a) cause of action. *See Biotechnology Value Fund*, 12 F. Supp. 3d at 1205 (Alsup, J.) (limitations period for plaintiffs' Exchange Act claims expired where defendant company's public disclosures gave plaintiffs "reason to believe that [the company's] analysis . . . was lacking," and thus a reasonably diligent plaintiff would have inquired further).

### 2. Plaintiff's Statements and Conduct in the *Stadnicki* Action Confirm His Claims Are Untimely.

It is not just the Complaint that establishes that Plaintiff's claim is untimely. Plaintiff has also said so in connection with his Motion to Intervene in the Stadnicki Action. In the course of trying to explain why permitting intervention would confer a benefit on LendingClub, counsel for Plaintiff Sawyer argued that, "*Stadnicki* 'secured an advantage' for the Company by securing a filing date within the statute of limitations. This is a benefit belonging to the Company . . . . It is a benefit which should not be given up without providing another shareholder, the Proposed Intervenor [Plaintiff], the opportunity to utilize that benefit in the Company's interest to pursue the claim." (Motion to Intervene, *supra*, at 7.)

This suggests that Plaintiff believes his own claim is untimely, and therefore he must intervene in the timely-filed *Stadnicki* action. Plaintiff confirmed this interpretation during oral argument on June 28, when he stated in response to the Court's question about timeliness of the *Sawyer* action, "the defendants are about to file a motion to dismiss, arguing that it's outside of the statute of limitations. And in the interest of the company, we're duty-bound to look at that objectively and say there is a chance they would succeed." (Paris Decl. Ex. A, *supra*, at 5:23-6:2.)

### 3. Plaintiff Has Not Pled Any Basis for Tolling the Limitations Period, and None Exists.

Plaintiff has not pleaded any facts from which the Court might infer a sufficient basis to find that Plaintiff's claims are subject to tolling, nor could Plaintiff allege the "extraordinary circumstance" that would potentially support tolling. *Lozano* v. *Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014) ("[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a

litigant has pursued his rights diligently but some *extraordinary circumstance* prevents him from bringing a timely action.") (emphasis added); *see also Santa Maria* v. *Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) ("If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs."). No such circumstances appears anywhere in Plaintiff's Complaint: while "[i]t is not necessary that the complaint explicitly plead equitable tolling," a plaintiff must allege "facts . . . suggesting the applicability of equitable tolling" in order to defeat a motion to dismiss based on the statute of limitations. *Biotechnology Value Fund*, 12 F. Supp. 3d at 1206 (quoting *Audio Marketing*, 2013 WL 633202, at *6); *see Wasco Prods., Inc.* v. *Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings.").

## V.   CONCLUSION

Sawyer's Complaint itself establishes that Plaintiff's claims are time-barred, and Plaintiff has conceded as much. Defendants respectfully request that the Court dismiss the Complaint accordingly.

| | | |
|---|---|---|
| 1 | Dated: July 12, 2018 | Respectfully submitted, |

By: /s/ *Adam S. Paris*
    Adam S. Paris
    parisa@sullcrom.com
    Shane M. Palmer
    palmersh@sullcrom.com
    SULLIVAN & CROMWELL LLP
    1888 Century Park East, Suite 2100
    Los Angeles, California 90067-1725
    Telephone:   (310) 712-6600
    Facsimile:   (310) 712-8800

    Nathaniel L. Green
    SULLIVAN & CROMWELL LLP
    1870 Embarcadero Road
    Palo Alto, California 94303
    Telephone:   (650) 461-5600
    Facsimile:   (650) 461-5700

*Counsel for Daniel Ciporin, Jeffrey Crowe, Timothy Mayopoulos, Mary Meeker, John C. Morris, Scott Sanborn, Lawrence Summers, and Simon Williams*

Dated: July 12, 2018

By: /s/ *Jonathan D. Polkes*
    Jonathan D. Polkes (admitted *pro hac vice*)
    jonathan.polkes@weil.com
    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153-0119
    Telephone:   (212) 310-8881
    Facsimile:   (212) 310-8007

*Counsel for John J. Mack*